**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re<br><br>Seeta Arjun,<br><br>            Debtor. | Case No.:      24-18726-ABA<br><br>Chapter:      11<br><br>Hearing:      June 17, 2026<br><br>Judge Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is the Motion for Summary Judgment filed by AdvoCare, LLC, Doc. No. 223. (the "Summary Judgment Motion"). The Summary Judgment Motion seeks to resolve the Debtor, Seeta Arjun's, Motion to Expunge Claims of AdvoCare, LLC, Doc. No. 117, (the "Expungement Motion", collectively with the Summary Judgment Motion, the "Motions"). After hearing oral argument and considering all of the pleadings filed by the parties on the Motions, the court concludes that entry of summary judgment in favor of AdvoCare, LLC is appropriate which results in the denial of the Debtor's Expungement Motion.

## JURISDICTION AND VENUE

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O), and the court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. Pursuant to Federal Rule of Bankruptcy Procedure 7052, the court issues the following findings of fact and conclusions of law.

## PROCEDURAL HISTORY

The Debtor, Seta Arjun, filed for bankruptcy under chapter 11, subchapter V on September 3, 2024, due to debts arising from her medical practice. Through her Expungement Motion, the Debtor has moved to expunge Proof of Claim No. 16 filed by AdvoCare, LLC ("AdvoCare"). The Debtor seeks to disallow AdvoCare's unsecured proof of claim in the amount of $344,600.29. AdvoCare's claim arises from money obtained by the Debtor pursuant to a line of credit agreement to establish and maintain AdvoCare primary care centers. AdvoCare filed a Response opposing the Expungement Motion. Doc. No. 123.  Debtor then filed a response to AdvoCare's opposition and a certification. Doc. Nos. 130 and 131.  The court held a hearing on July 29, 2025 and entered an order allowing the parties to take additional discovery.  Doc. No. 139. Thereafter, Debtor filed supplemental certifications in support of the Expungement Motion. Doc. Nos. 181 and 186. AdvoCare filed a supplemental brief in opposition. Doc. No. 187. A second hearing was scheduled

to be held on March 19, 2026, but was adjourned at the parties' request.  However, before a second hearing could be held, AdvoCare filed its Summary Judgment Motion seeking an order (i) denying the Motion to Expunge with prejudice; (ii) allowing Advocare's claim in full; and (iii) entering summary judgment in favor of AdvoCare and against the Debtor. Doc. No. 223. The Debtor filed an opposition to the Motion for Summary Judgment. Doc. No. 230. Although the Motions have been adjourned several times, a hearing was finally conducted on June 17, 2026. The record is closed. The matter is ripe for disposition.

## FACTS

In the summer of 2020, Debtor was first put into contact with AdvoCare by a member physician, Dr. Neil Mushlin, D.O., who had attended medical school with the Debtor. When the Debtor expressed interest in joining AdvoCare, Dr. Mushlin directed the Debtor to contact Dr. Mohbad Mohazzebi, M.D., an AdvoCare member and chief of the market development committee. The Debtor alleges that she and Dr. Mohazzebi repeatedly discussed AdvoCare obtaining for her credentials to provide primary care services. The Debtor further alleges that after she was unable to obtain credentialing through ProCred, LLC, Dr. Mohazzebi advised her that AdvoCare would no longer be using ProCred for credentialing due to mistakes being made and the whole process would be brought in-house. Deposition Testimony of Dr. Seeta Arjun, D.O., Doc. No. 187-2 at 46.

The Debtor and AdvoCare executed a Letter of Intent to join AdvoCare as a member-physician on July 31, 2020. Doc. No. 124 at 2. AdvoCare and the Debtor worked together to establish a primary care practice known as AdvoCare In Focus Medical Associates.  On March 18, 2021, the Debtor executed AdvoCare's Standard Member Physician Employment Agreement which became effective June 1, 2021 along with the Agreement Concerning Advocare Line of Credit, Equipment, Leases and Loans and Other Legal Obligations ("Line of Credit"). Doc. No. 124, Ex. E and Ex. F.  On April 24, 2021, Debtor executed a joinder to the Amended and Restated Operating Agreement of AdvoCare, LLC as a requirement for becoming a member of AdvoCare. Doc. No. 187-2 at 13.

After signing the Letter of Intent but before executing AdvoCare's contracts, the Debtor pursued primary care provider credentialing through ProCred, which also provided credentialing services to AdvoCare. Credentialing is the process by which insurance companies confirm whether a physician has the appropriate education, licensing, and certifications to be enrolled in an insurance company's provider panel and thus receive reimbursement for services provided. The Debtor is a board-certified emergency medicine physician. The Debtor is not now and has never been board-certified in primary medicine. On November 20, 2020, ProCred sent the Debtor a Standard Authorization, Attestation and Release which provides:

> I acknowledge that each Entity has its own criteria for acceptance, and I may be accepted or rejected by each independently. I further acknowledge and understand that my cooperation in obtaining information and my consent to the release of information does not guarantee that any Entity will grant me clinical privileges or contract with me as a provider of services.

Doc. No. 186-1 at 10.

When she was unable to obtain primary care provider credentialing by her own efforts with ProCred, AdvoCare employees attempted to obtain the credentials. Doc. No. 186 at ¶¶ 13-15, 20. After the Debtor was initially denied credentialing as a primary care provider and while awaiting the results of AdvoCare's attempts at credentialing, the Debtor hired Dr. Spring Matthews Brown, a board-certified primary care physician, to provide patient services at her AdvoCare practice. Dr. Matthews Brown provided service at AdvoCare InFocus Medical Associates from its opening on June 14, 2021.

In May 2023, AdvoCare was advised that the Debtor would not be credentialed to provide primary care services by Horizon Blue Cross Blue Shield of New Jersey. Horizon advised that it would not credential the Debtor as a primary care provider because, as an emergency medicine physician, she did not have internal medicine or family medicine training. Doc. No. 129-1 at 21, 25; Doc. No. 230-3 at 25. 28. In the end, neither the Debtor nor AdvoCare were able to obtain for Debtor credentialing to provide services as a primary care provider.

After joining AdvoCare, the Debtor was entitled to draw upon AdvoCare's Line of Credit. Debtor made several draws upon the line of credit to finance the opening of her AdvoCare InFocus Medical Associates practice. The Debtor was unable to generate sufficient income to support the AdvoCare InFocus Medical Associates because she was not credentialed to provide services as a primary care provider. Due to mounting debt, the Debtor disassociated from AdvoCare in November 2023. Upon disassociation, the Debtor owed $319,000.00 on the Line of Credit, $1,800.27 in disassociation expenses, $23,522.50 in attorneys' fees and court costs of $277.52.

The Debtor deposed Dr. Mushlin and Dr. Mohazzebi, regarding their and/or AdvoCare's representations regarding credentialing. Dr. Mushlin denied ever speaking to the Debtor about credentialing because he could only speak to his experience running his Advocare centers. Dr. Mushlin testified in relevant part:

> Q:    Okay. And did you ever discuss with Seeta in your initial conversations before she became a member the topic of credentialing?
> A.    **No.**
> Q.    Never?
> A.    **I don't speak about credentialing.**
> Q.    So do you have any idea what credentialing is all about?
> A.    **Within Advocare, I am not part of that at all.**
>
> * * *
>
> Q.    So you never discussed credentialing with her at all?
> A.    **I don't have anything to do with credentialing.**
>
> * * *
>
> Q.    Did you ever make any representations to Seeta Arjun that she could practice primary care with Advocare?

3

> **A.** **No.**

Deposition Testimony of Dr. Neil Mushlin, D.O., Doc. No. 187-4 at 11, 12, and 18.

Dr. Mohazzebi testified that he did not recall the substance of his conversations with the Debtor including whether her credentialing as a primary care provider was discussed. Doc. No. 187-5 at 8. Dr. Mohazzebi testified that he did not take part in the credentialing process and did not speak to the Debtor regarding the initial failure to obtain credentialing, and he would never have represented to the Debtor that AdvoCare would obtain for her primary care credentialing. *Id.* at 13-15. Dr. Mohazzebi specifically testified in relevant part:

> **Q.** Okay. Do you or have you ever dealt with credentialing?
> **A.** **No.**
>
> * * *
>
> **Q.** Do you ever remember talking to Seeta Arjun about credentialing?
> **A.** **I don't remember.**
>
> * * *
>
> **Q.** What do you remember about having any conversations with Seeta Arjun about credentialing?
> **A.** **Credentialing? I do not speak of credentialing. That's not my topic. I've had many conversations with Dr. Arjun. Credentialing is not my topic.**
>
> * * *
>
> **Q.** Doctor, understand that you don't recall specifics of the conversations you had in the past with Dr. Arjun, but do you recall whether you ever represented to Dr. Arjun that she could be credentialed as a primary care physician? that she
> **A.** **I would never.**
> **No, I did not represent that.**

Deposition Testimony of Dr. Mohbad Mohazzebi, M.D., Doc. No. 187-5 at 8, 12, 16.

### THE PARTIES' ARGUMENTS

The Debtor initially argued that AdvoCare's failure to obtain for her credentials to provide primary care services, an alleged condition fundamental to the business arrangement, constitutes a material breach of their agreement. During oral argument at the first hearing, The Debtor indicated that she was also asserting a claim for fraudulent inducement based upon AdvoCare's alleged representations that it would obtain for her credentials to provide primary care services.

The Debtor alleges that AdvoCare through its member physician, Dr. Mohazzebi, advised her that by joining AdvoCare as a member, she would be able to open a primary care office and that she would be required to be credentialed under AdvoCare's employer identification number. Doc. No. 186 at ¶10. Debtor had attempted to obtain credentialing as a primary care provider in the past but had been denied. She argues that she would not have joined AdvoCare and expended hundreds of thousands of dollars to establish primary care facilities but for AdvoCare's

representations that it would obtain for the Debtor credentials to provide primary care services, and she would then be able to earn more income than she did as an emergency medicine physician.

AdvoCare notes that all the relevant documents contained integration clauses. Doc. No. 123 at ¶25, Doc No. 223-1 at 8. AdvoCare argues that if credentialing was critical to agreement between it and the Debtor, credentialing would have been addressed by the relevant agreements. Doc. No. 123 at ¶24, Doc. No. 223-1 at 8. AdvoCare asserts it was never its practice to represent to providers that it could obtain credentialing. Doc. No. 123 at ¶26, Doc. No. 223-1 at 8. AdvoCare further argues that the parol evidence rule and the integration clauses prohibit the Debtor from introducing pre-contract representations to support her claim of breach of contract. Without such extrinsic evidence, the Debtor is unable to prevail on her breach of contract claim. Doc. No. 187 at 9-10, Doc. No. 223-1 at 8.

AdvoCare also argues that the Debtor cannot prove fraudulent inducement because any statement regarding credentialing are "[s]tatements as to future or contingent events, to expectations or probabilities at to what will or will not be done in the future which cannot constitute misrepresentations" particularly where events are contingent upon acts of third parties. Doc. No. 187 at 10 and Doc. No. 223-1 at 9 (quoting *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1997)).

AdvoCare also asserts the Debtor cannot satisfy the second and third factors necessary to establish a claim for fraudulent inducement — knowledge of the falsity of the statement and intent to induce reliance. AdvoCare argues that the Debtor's claim fails because both Dr. Mushlin and Dr. Mohazebbi have categorically denied making any representations regarding credentialing and even if such representations occurred the Debtor has failed to show that statements were knowingly false and made to induce the Debtor into a relationship with AdvoCare. Doc. No. 223-1 at 10.

AdvoCare also argues that the Debtor's reliance upon any representation regarding credentialing as a primary care provider is not reasonable because the Debtor is emergency medicine physician without any training or board certifications in primary care. AdvoCare argues that the Debtor realized this fact and as a result employed a primary care physician, Dr. Matthews Brown, prior to the Debtor joining Advocare or accessing the line of credit, and therefore the Debtor cannot prove damages based upon the alleged representations that AdvoCare would get her credentials to provide primary care services. Doc. No. 223-1 at 11-12.

The Debtor opposes AdvoCare's motion for summary judgment arguing that the court should not weigh credibility at the summary judgment phase in a breach of contract and fraudulent inducement case, because such causes of action are fact intensive and require a determination as to whether reliance was reasonable. Doc. No. 230 at 2. The Debtor asserts that in addition to credibility issues there is competing testimony as to material fact and therefore a plenary hearing is necessary. The Debtor asks the court to consider why she would enter into the AdvoCare agreement and incur financial obligations if she did not believe that she would be able to get credentialing under the AdvoCare model. Doc. No. 230 at 3. The Debtor argues that the court is permitted to consider parol proof of fraud where fraud in the inducement is alleged because such evidence is not offered to add or change the contract terms but to void the contract all together.

5

Doc. No. 230 at 3-4 (citing *CDK Glob., LLC v. Tulley Auto Grp., Inc.*, No 15-3103 (KM)(JBC), 2016 U.S. Dist. LEXIS 57189, at *9 (D.N.J. Apr. 29, 2016)).

## DISCUSSION

A court may grant summary judgment under Federal Rule of Civil Procedure 56(a), made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056, when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe facts and inferences in a light most favorable to the non-moving party. *See e.g. Lemaire v. Hartford Life & Acc. Ins. Co.,* 69 F. App'x 88, 91 (3d Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Courts use a burden shifting paradigm for claims brought in the bankruptcy court under 11 U.S.C. § 502(a). *In re Fencl*, No. 22-18697-ABA, 2026 Bankr. LEXIS 73, at *18-19 (Bankr. D.N.J. Jan. 12, 2026) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)). "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The burden then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *Id.* "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Allegheny*, 954 F.2d at 174. "The burden of persuasion is always on the claimant." *Id.*

Where a contract demonstrates that the parties have merged all prior negotiations and agreements in writing, the parol evidence rule bars evidence of prior negotiations and agreements tending to add or vary the terms of the writing being considered. *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570, 573, 598 A.2d 1234 (App. Div. 1991). An integration clause within the contract is evidence of such intent. *Harker v. McKissock*, 12 N.J. 310, 321-22, 96 A.2d 660 (1953) ("The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties.").

Generally, the parol evidence rule prohibits the introduction of evidence that would alter an integrated written document. *Palmer v. Flagship Resort Dev. Corp.*, 481 N.J. Super. 465, 480, 335 A.3d 641, 650 (App. Div. 2025). Thus, evidence of prior written or oral agreements is not admissible to vary the terms of an integrated agreement. *Id.* However, a party may introduce extrinsic evidence to prove fraud in the inducement. *Id.* "[P]arol proof of fraud in the inducement is not considered as either additional or substitutionary but rather as indicating that the instruments is, by reason of the fraud, void or voidable." *Id.* (quoting *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 378, 164 A.2d 607 (App. Div. 1960)).

AdvoCare established the *prima facie* validity of its claim under Section 502 by filing its proof of claim. The burden has now shifted to the Debtor to present evidence sufficient to rebut the *prima facie* validity of AdvoCare's claim. The Debtor seeks to convince this court that

AdvoCare's claim is invalid and should be expunged due to either AdvoCare's breach of contract or because AdvoCare fraudulently induced the Debtor to enter into AdvoCare's contracts.

While the court understands the Debtor's desire to present her story in court, the court does not believe that a plenary hearing is necessary to resolve these motions.  Although the Debtor and AdvoCare have presented differing testimony regarding the contents of conversations, the court can render a decision based upon the law without crediting or discrediting the testimony provided by either party. As expressed during oral argument, the court does not see what new evidence the Debtor would be able to elicit from Drs. Mushlin and Mohazzebi if a plenary hearing was held given that Debtor's counsel has already deposed both doctors. *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1276 (Fed. Cir. 2018) (district court was not required to give them a second bite at the apple at an evidentiary hearing where witnesses had an opportunity to explain their actions at their depositions); *Bankdirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 U.S. Dist. LEXIS 57254, at *5 (N.D. Ill. Apr. 4, 2018) (holding an evidentiary hearing is not required where there is a wealth of deposition testimony because any testimony will be repetitive and the parties have had ample opportunity to brief the issue).

The court finds AdvoCare's position more persuasive. It has reviewed the AdvoCare Operating Agreements, the Employment Agreement, the Membership Contracts, the Line of Credit Agreement, the Indemnity and Security Agreement, and various correspondence between the parties. The issue of credentialing is mentioned only once in the Letter of Intent, which was signed at least six months prior to the Debtor executing AdvoCare's contracts, and only to advise that the credentialing process would begin once AdvoCare received the signed Letter of Intent.  The Amended and Restated Operating Agreements and the Employment Agreement, and the Line of Credit Agreement each contain an "Entire Agreement" provision providing that each document was the entire agreement among the parties on the subject matter and the agreements supersede any prior agreement or understanding. These integration clauses are fatal to the Debtor's claim that AdvoCare breached its contracts. The court may not consider any extrinsic evidence. The relevant contracts are silent regarding credentialing and therefore AdvoCare was not obligated to obtain credentialing as a primary care provider for the Debtor as alleged.  Accordingly, the court will enter summary judgment in favor of AdvoCare on the breach of contract claim.

Next, the court will address the Debtor's assertion of fraudulent inducement. To establish a claim for fraudulent inducement, a party must show the following: (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment. *In re Hollister Constr. Servs., LLC*, Nos. 19-27439 (MBK), 22-01037 (MBK), 2023 Bankr. LEXIS 634, at *14-15 (Bankr. D.N.J. Mar. 10, 2023) (other citations omitted). It is hornbook law that an integration clause does not bar a fraud in the inducement claim. *In re Chung-Hwan Kim*, Nos. 12-30363 VFP, 12-2140 VFP, 2018 Bankr. LEXIS 281, at *81 (Bankr. D.N.J. Jan. 31, 2018) (citing *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 378, 164 A.2d 607 (App. Div. 1960)).

In *Luscko v. S. Container Corp.*, 408 F. App'x 631, 634-35 (3d Cir. 2010), the Third Circuit discussed New Jersey case law regarding fraudulent inducement.

As a general rule, fraudulent inducement cannot be predicated upon representations which involve things to be done in the future. *Anderson v. Modica*, 4 N.J. 383, 73 A.2d 49, 53 (N.J. 1950). However, "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud." *Lo Bosco v. Kure Eng'g*, 891 F. Supp. 1020, 1031 (D.N.J. 1995) (citing *Phoenix Techs., Inc. v. TRW, Inc.,* 834 F. Supp. 148, 152 (E.D. Pa. 1993), and *Notch View Assocs. v. Smith*, 260 N.J. Super. 190, 615 A.2d 676, 682 (N.J. Law Div. 1992)). Intention may be derived from circumstantial evidence such as utter recklessness and implausibility of the statement in light of subsequent acts and events, a showing that the promisor's intention to perform was dependent upon contingencies only known to him, or evidence showing at the time of the promise that the promisor could not or would not fulfill the promise. *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 164 A.2d 607, 613 (N.J. Super. Ct. App. Div. 1960). Mere non-performance of a promise is insufficient to show that a promisor had the requisite intent not to perform. *Notch View Assocs.,* 615 A.2d at 682 (citing *Ocean Cape Hotel Corp.*, 164 A.2d at 614).

A claim for fraudulent inducement requires that the offending party make a material representation as to past or present fact. The basis of the Debtor's claim is that AdvoCare made a material misrepresentation regarding its ability to obtain credentialing. If the court was to accept that AdvoCare made such representations, which it denies doing, this alleged promise does not constitute a misrepresentation regarding past or present fact but rather is a promise to do something in the future, which is not actionable to support a claim sounding in fraud. *Blanos v. Penn Mut. Life Ins. Co.*, No. 09-5174, 2010 U.S. Dist. LEXIS 2326, 2010 WL 143670, at *7 (D.N.J. Jan. 12, 2010) (dismissing a fraudulent inducement claim where the plaintiff sought to litigate oral representations made regarding future hiring and logistical practices because the express terms of the contract at issue included an "entire understanding" clause); *Travelodge Hotels, Inc. v. Durga, LLC*, No. 15-8412, 2024 U.S. Dist. LEXIS 176924, 2024 WL 4345051, at *7 (D.N.J. Sept. 30, 2024) (finding that even statements by a party involving words such as "'will,' plan' or 'expect' rather than words indicating a possible future event such as "might" are still insufficient for a fraud claim). The court acknowledges that the Debtor believed that by joining AdvoCare she would be able to be credentialed to provide primary care service and based on that belief expended hundreds of thousands of dollars. Nevertheless, the Debtor's belief in AdvoCare's alleged oral promises to obtain credentials to provide primary care services, does not support a claim for fraudulent inducement.

Even if AdvoCare made representations regarding credentialing, the Debtor has not presented any evidence that AdvoCare knew that its statements were false or intended to induce the Debtor's reliance. If AdvoCare knew it could not obtain credentialing for the Debtor why did it expend its employees' time and energy in the attempt to credential the Debtor? To the contrary, the email correspondence between the Debtor and AdvoCare's employees shows that AdvoCare worked with the Debtor to obtain credentialing, but neither the Debtor nor AdvoCare were successful in convincing third parties to issue credentials to provide primary care services. Doc.

No. Doc. No. 129-1; Doc. No. 230-3.  The Debtor did not present any evidence that AdvoCare never intended to fulfill its alleged promise or that it knew it could not fulfill its promise. Both the Debtor and AdvoCare attempted to obtain primary care credentials for the Debtor and both failed despite substantial effort.

Further, the court doesn't find the Debtor's reliance reasonable given that the Debtor should have realized that the alleged promises were not guarantees given that she signed ProCred's Standard Authorization, Attestation and Release which expressly stated that credentialing was not guaranteed. Doc. No. 186-1 at 10. The court also does not find it reasonable to rely upon AdvoCare's alleged promise when a decision to credential a provider is solely within the power of third-party health insurance carriers. Thus, the Debtor cannot satisfy the requirement that AdvoCare intended for her to rely upon any alleged representations. Accordingly, the court grants summary judgment in favor of AdvoCare on the claim for fraudulent inducement.

## CONCLUSION

For all of the foregoing reasons, the court concludes that summary judgment should be entered in favor of AdvoCare and the Debtor's Expungement Motion must be denied.

Dated: June 25, 2026                          /s/ Andrew B. Altenburg, Jr., Judge
                                              United States Bankruptcy Court

9